188 So.2d 725 (1966)
Earl David BEAVERS et ux., Plaintiffs-Appellees,
v.
James A. BUTLER et al., Defendants-Appellants.
No. 10622.
Court of Appeal of Louisiana, Second Circuit.
June 30, 1966.
Rehearing Denied August 4, 1966.
Writ Refused October 11, 1966.
*726 Hayes, Harkey & Smith, Monroe, Martin Rosen, New York City, for James A. Butler and Quincy Mut. Fire Ins. Co., defendants, plaintiff in reconvention and third-party plaintiffs.
Thompson, Thompson & Sparks, Monroe, for Earl David Beavers and Mrs. Clara Claudell Beavers, plaintiffs-appellees, Earl David Beavers, defendant in reconvention and third-party defendant.
Before HARDY, GLADNEY and AYRES, JJ.
AYRES, Judge.
This is an action by plaintiffs, husband and wife, for the recovery of damages resulting from a motorboat accident. Made defendants were James A. Butler and his liability insurer, Quincy Mutual Fire Insurance Company. Defendant Butler reconvened for damages against plaintiff Earl David Beavers. Butler and his insurer made a third-party demand also, against Beavers, upon a basis that in the event of judgment in favor of Mrs. Beavers her husband would be liable for one-half of the judgment because of his alleged guilt of concurrent negligence. These demands were rejected by the trial court, which awarded judgment in favor of plaintiff Mrs. Clara Claudell Beavers in the principal sum of $22,784.00 and, in favor of plaintiff Earl David Beavers, in the principal sum of $1,646.38. From the judgment thus rendered and signed, defendants appealed. Plaintiffs have answered the appeal praying for an increase in the awards.
Appellants specified a number of errors against the judgment, primarily as to factual findings which led to the conclusion that the negligence of defendant Butler was the sole and proximate cause of the accident.
The collision occurred on Lake D'Arbonne in Union Parish on the afternoon of May 23, 1964, in a blind curve of a narrow channel of the lake, formerly the mainstream of Bayou D'Arbonne. A 14-foot boat powered by a 40 h. p. Johnson motor owned and operated by Earl David Beavers, accompanied by his wife as a passenger, moving in a northwesterly direction, collided with a 17-foot boat powered by a 90 h. p. Johnson motor owned and operated by defendant Butler, who was accompanied by his wife, Mr. and Mrs. Edmond Middleton, and two small children, as it was moving in a southeasterly direction. The Beavers boat was being followed at a distance of 75-100 yards by another boat owned and operated by Glen Ray Wiggins, who was accompanied by his wife and young son.
*727 Lake D'Arbonne is an artificial lake, rather extensive in area, covering approximately 15,000 acres. The channel in which the collision occurred is that which marked the course of Bayou D'Arbonne as it existed prior to the creation of the lake. This channel, which serves as a connection between the main area of the lake and the area wherein the highway boat ramps are located, is marked on each side by tree lines formerly constituting the bayou banks. The blind curve where the accident occurred bends to the left of the direction which was being followed by the Beavers boat and to the right of the direction in and, therefore, as Butler boat was moving. Photographs offered in evidence disclose that the channel makes practically a 90-degree turn, and, therefore, as Butler executed this turn, the right, or starboard, side of his boat should have first appeared to the view of the Beavers because of the angle of its approach. Upon entering the curve and perceiving the Beavers boat, Butler turned sharply to the starboard and was struck amidship by the Beavers boat. Following the impact, with the Butler boat's motor still running, both boats were propelled into the brush bordering the channel on the starboard side of the Butler boat. The Butler boat then sank.
Usual charges and countercharges of negligence were made by the parties litigant. For instance, Butler is charged in nonexclusive particulars with operating a highpowered boat in a narrow channel, in which visibility was limited, at a grossly excessive rate of speed; in failing to keep a proper lookout, and in disregarding the safety of other boaters in the area; in making a complete 180-degree turn in the direct path of an oncoming boat, and in failing to pass or signal his intention to pass on one side or the other of an oncoming boat; or to shut off his motor or to reduce his speed. Similar charges of negligence were directed to Beavers, particularly in operating his boat in a narrow, winding channel at a fast, excessive, and dangerous rate of speed without having his boat under control, and in proceeding on his left, or port, side of the channel, and in approaching a sharp bend in the channel at a fast, excessive, and dangerous rate of speed without sounding a warning or first ascertaining whether another boat was approaching from the opposite direction.
Defendant further pleaded, in the alternative, that Mrs. Beavers was guilty of contributory negligence in failing to protest her husband's careless operation of his boat, or to keep a proper lookout, or to protect herself from injury.
In law, rivers and streams are regarded as public navigable rivers which are navigable in fact, and they are navigable in fact when they are used or are susceptible of being used in their ordinary condition as highways of commerce over which trade or travel is, or may be, conducted in the ordinary mode of trade or travel on water. The Daniel Ball v. United States, 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1871).
Armand F. Rabun, Esq., an attorney of the Farmerville, Louisiana, bar and former chairman of the Bayou D'Arbonne Lake Watershed District Commission, testified, not only from personal knowledge but from history, that steamboat traffic on Bayou D'Arbonne was, at times past, quite extensive. In fact, Bayou D'Arbonne formed a part of the navigable waters of an extensive river system including the Ouachita, Black, Red, and Mississippi rivers.
Nor does the construction of a dam across the bayou in the creation of Lake D'Arbonne effect a change in its status as a navigable stream. 65 C.J.S. Navigable Waters § 5 c(2), p. 51; Economy Light & Power Co. v. United States, 256 U.S. 113, 41 S.Ct. 409, 65 L.Ed. 847 (1921); United States v. Appalachian Electric Power Co., 311 U.S. 377, 61 S.Ct. 291, 85 L.Ed. 243 (1941). We, therefore, find no basis for disagreement with the trial court in its findings that Lake D'Arbonne constitutes a part of the navigable waters *728 of the United States, and that the rules prescribed in the appropriate Federal statutes are applicable to tort cases arising thereon.
When a maritime matter is pending in a state court, that court is required to follow the substantial maritime law, supplemented by state law if no contradiction appears. Rojas v. Robin, 230 La. 1096, 90 So.2d 58, 65 A.L.R.2d 1218 (1956); Jansson v. Swedish American Line, 185 F.2d 212, 30 A.L.R.2d 1385 (1st Cir., 1950).
It appears immaterial, however, whether the rights and the liabilities of the parties herein involved are governed according to applicable Federal statutes or by the principles generally applied in negligence cases. However, it may be pointed out that the Motorboat Act of 1940, 46 U.S.C.A. § 526l, provides that
"No person shall operate any motorboat or any vessel in a reckless or negligent manner so as to endanger the life, limb, or property of any person."
A further rule is that, in the operation of boats in a narrow channel of an inland waterway, boats approaching one another head on shall each veer to the right and pass each other to the left, or on the portside, of the boat. 33 U.S.C.A. § 343(a).
Nevertheless, negligence, wheresoever the term is applied, is a lack of care under the circumstances prevailing at the time; it is the failure to exercise that care which a reasonably careful and prudent person would exercise under like circumstances.
The principal issues presented by this appeal are factual in nature and relate to the circumstances bearing upon the positions of the two boats with respect to the channel, the rate of speed, and the want of a proper lookout.
From our review of the record, we are convinced there was little, if any, difference in the speed of the two boats; that such speed was from 20-25 m.p.h. as the two boats approached the blind 90-degree bend in the channel; that the channel was approximately 55 feet wide between the foliage of the trees lining the former banks of the bayou; and, notwithstanding the obstructions to their view, both Butler and Beavers continued at full speed, without regard to the possible presence of other boaters around the bend.
Defendant's boat apparently reached the curve first and, on its rounding the bend, plaintiff's boat came into view in close proximity, whereupon defendant Butler cut his boat sharply to his right; plaintiff Beavers turned the switch of his motor to "off" position, but, nevertheless, struck the left, or port, side of the Butler boat near the operator's seat. The Butler boat continued with its motor running, carrying the Beavers boat with it into the bushes on the former bank of the channel, before sinking.
The Beavers boat was admittedly moving to its left of the center of the channel. There is some controversy as to just how far it was to the left. Plaintiffs claim it was only four or five feet; whereas defendants would place its path much nearer the left bank. A similar controversy exists as to the exact location of defendant's boat. From our review of the record, while it would appear difficult, if not impossible, to locate the precise position of either boat, we are convinced plaintiff's boat was farther to the left of the channel than he or his witnesses claim, and that defendant's boat was not hugging its right bank as closely as defendant would have it believed that it was farther out in the channel than defendant claimed.
After a consideration of all the aforesaid facts and circumstances, the conclusion appears inescapable that both Butler and Beavers were guilty of negligence. Had either or both operators been alert or keeping a proper lookout, or proceeding at a reasonable speed, the accident could have been averted.
*729 We find no basis for concluding Mrs. Beavers was guilty of contributory negligence. It would appear that the rights and duties of a guest in a motorboat are basically the same as in an automobile. With respect to such a plea to defeat recovery of damages by a guest passenger for injuries sustained in an automobile accident, the Supreme Court, in White v. State Farm Mut. Auto Ins. Co., 222 La. 994, 64 So.2d 245, 249-250, 42 A.L.R.2d 338 (1953), stated:
"Contributory negligence is, as the phrase signifies, negligence which contributes to the accident, that is, negligence having causal connection with it and but for which the accident would not have occurred. Insofar as the rights of a guest in an automobile are concerned, it is settled that, in actions against third persons, the negligence of the host driver does not bar recovery because his negligence cannot be imputed to the guest. Lawrason v. Richard, 172 La. 696, 135 So. 29; Lorance v. Smith, 173 La. 883, 138 So. 871. However, a guest may be denied recovery on the ground of contributory negligence in instances where he is guilty on his own part of independent negligence of such a nature, that, but for which, his injuries would not have been sustained. Lorance v. Smith, supra; Churchill v. Texas & Pac. Ry. Co., 151 La. 726, 92 So. 314; Delaune v. Breaux, 174 La. 43, 139 So. 753; Squyres v. Baldwin, 191 La. 249, 185 So. 14. But in determining whether the asserted fault of a guest has been a contributing factor in bringing about his injuries, it is first necessary to ascertain what duties are imposed upon him as pertain to the operation of the vehicle and the safety of the journey. It is firmly established by the above cited authorities of this Court and others of the Courts of Appeal of this State, too numerous to mention, that a guest is under no duty to supervise the driving of the vehicle and he is not obliged to look out for sudden or unexpected dangers that may arise. Albeit, he has the right to place reliance upon the driver to discharge that obligation and, as aptly expressed by the Court of Appeal, Second Circuit, in Singley v. Thomas, 49 So.2d 465, 469, `* * * is not required to monitor the operation or to pay attention to the road and other traffic conditions' in the absence of a showing that he has actual or constructive knowledge that the driver is incompetent or unfit to operate the vehicle.

"On the other hand, the jurisprudence has imposed upon the guest an obligation to avoid an accident or injury to himself under certain conditions. That duty has been tersely said by this Court, in Delaune v. Breaux, supra, to exist in cases where the guest `* * * is aware of the fact that there is danger ahead, which apparently is unknown to the driver or may be unknown to him, or where a sudden or unexpected danger arises to the knowledge of the guest, apparently not observed by the driver * * *.' 174 La. at page 47, 139 So. at page 755. In such situations, it is incumbent on the guest to warn the driver of the danger and, if he fails to do so at a time when the driver is able to avert it, his dereliction may be said to be a contributing cause of any injury he may sustain." (Emphasis supplied.)
There is no showing that Mrs. Beavers was aware of any danger, particularly of any danger which may have been unknown to her husband. This occasion was Mrs. Beavers' first on Lake D'Arbonne. Obviously, her knowledge of the lake and of the channel of the former bayou was limited. Moreover, after the appearance of the Butler boat in the path of the Beavers boat, there appeared neither time nor opportunity for warning or evasive action by either of plaintiffs. The principles referred to in Sambola v. Public Belt R. R. Commission, 56 So.2d 267, 272, La.App., Orleans 1952, appear appropriate to Mrs. Beavers' situation *730 in the instant case. There, the court stated:

"Ordinarily a guest may rely on the driver to keep a proper lookout, unless the danger is obvious or is known to the guest and is apparently not known to the driver. The guest cannot be expected to maintain the same careful lookout as the driver and, therefore, the guest, of necessity, must entrust the greater part of his safety to the driver. In other words two circumstances must concur in order to constitute negligence on the part of a guest passenger(a) an opportunity to be apprised of the danger and (b) the further opportunity to warn the driver." (Emphasis supplied.)
There is no showing, as heretofore noted, that Mrs. Beavers was apprised of any danger or that she had an opportunity to warn the operator of the boat of an impending collision.
Mrs. Beavers, 25 years of age, the mother of two children, aged 5 and 7 years, did her own household work prior to the accident. This work and her outside activities evidenced a condition of excellent health and of unusual strength.
That the force of the impact of the collision was severe is evidenced by the fact that some of the contents of the boats were thrown through the air; a hole was knocked in the side of the Butler boat, causing it to sink; and the front end of the Beavers boat was smashed.
From the force likewise applied to Mrs. Beavers, she sustained injuries of a most serious character. Immediately apparent were severe facial injuriesa broken nose, the arch of which was depressed between the eyes. Bleeding was profuse. After emergency treatment at a Farmerville clinic, she was transported by ambulance to Glenwood Hospital in West Monroe, where Dr. Ben B. Cobb and Dr. William B. Liles performed exploratory surgery to determine the nature and extent of her internal injuries. This procedure was deemed necessary inasmuch as blood transfusions failed to alleviate conditions created by the enormous loss of blood, which failure indicated plaintiff had sustained internal injuries. The operation confirmed this condition. The spleen and left kidney were found to be ruptured. Because of this condition, both of these organs were removed.
Plaintiff sustained shock, a brain concussion, and unconsciousness. Recovery of consciousness was not complete, even when she was released from the hospital after confinement for a period of 18 days. A nervous condition worsened, necessitating additional hospitalization for a subsequent period of five days.
Mrs. Beavers also sustained additional multiple fractures of the face. Fracture lines extended through both eye sockets, accompanied by slight depression of the orbital floors. Fractures likewise extended across the base of the nose and the nasal bone into the ethmoid cavities or sinuses, with a depression of the nasal bone or nasal pyramid between the eyes. There was a complete separation of the maxilla, the upper jaw, which was driven backward and which later healed in an abnormal position.
Surgery was advised with reference to the restoration of the dorsal line of the nose and to the reduction of the marked protrusion or bulbous characteristic of the lower part of the nose. The procedure called for two separate operations, under general anesthetics, spaced two months apart, with an anticipated 5-day period of hospitalization for each of these operations. The cost for this additional surgery was estimated at $1,755.00. Nevertheless, according to expert opinion, significant, permanent facial disfigurement would remain.
The removal of the kidney was a serious loss. The loss of the spleen was also significant. Hazards to plaintiff's health and life follow the loss of these two organs. Such hazards would, in the experts' opinions, be increased during pregnancy or from strain or injury to the other kidney.
*731 From the inception, Mrs. Beavers has endured considerable pain and suffering. This, no doubt, will be repeated during and following the two future operations.
The determination of an appropriate award of damages in personal injury cases is always a matter of serious concern to the courts. We are not unmindful, however, that such a determination is largely within the discretion of the trial court. But, as pointed out in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963), and Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964), appellate courts may, and we may say it is their duty to, review all the facts and circumstances of the case, and particularly those upon which a trial court based its award, as well as the amounts awarded in similar cases, to determine whether there has been an abuse of the "much discretion" vested in trial courts.
From our review of the record of the injuries sustained and the suffering endured, and to be endured, by plaintiff Mrs. Beavers, as heretofore particularized, we are of the opinion the award as made is grossly inadequate and there has been an abuse of discretion. After reviewing the facts of the instant case in light of awards made in the cases cited, as well as the awards in cases disclosed by our own research, we have concluded that an award of $30,000.00 will do justice between the parties, and that such an award is neither excessive nor inadequate. In addition, plaintiff should recover special damages in the sum of $4,539.00 for hospital and medical expenses incurred and to be incurred in the treatment of her injuries. The wife's right to the recovery of these expenses, while apparently not contested, is based upon the fact that she and her husband were judicially separated and that, upon resumption of their marital relationship, the community of acquets and gains formerly existing between them was not reinstated. Expense of medical treatment of the wife subsequent to a dissolution of the community estate is not a community debt for which the husband is liable; recovery for such expenses in a tort action may be had in the wife's action and in her name. Lewis v. American Brewing Co., 32 So.2d 109, La.App., Orleans 1947 (writ denied); Dauterive v. Sternfels, 164 So. 349, La.App., 1st Cir. 1935.
The conclusion heretofore reached brings up for consideration defendants' third-party proceeding against plaintiff Earl David Beavers, from whom contribution is sought as a joint tort-feasor. The rule has been established that such contribution may be exacted for a tort-feasor's proportion of an award for the damage occasioned by his acts. Smith v. Southern Farm Bureau Casualty Ins. Co., 247 La. 695, 174 So.2d 122 (1965); Sterling v. Ritchie, 182 So.2d 735, La.App., 1st Cir. 1966.
Another result of the conclusions reached here is that plaintiff Earl David Beavers' demands against the defendants, James A. Butler and Quincy Mutual Fire Insurance Company, and Butler's reconventional demands against Beavers should be rejected.
The remaining issue between plaintiff Mrs. Beavers and Butler's insurer concerns a question as to whether coverage afforded by the policy for medical expenses in the amount of $500.00 is included within the limits of the comprehensive liability (bodily injury and property damage) of $25,000.00. Plaintiff contends that, inasmuch as her claim for personal injuries exceeds this latter limit, as do the medical expenses, the amount stipulated therefor, there would be no duplication of collections by the allowance of $500.00 to apply on the medical expenses, leaving the $25,000.00 for comprehensive liability to be applied to her personal injuries. Thus, plaintiff would distinguish the present case from Gunter v. Lord, 242 La. 943, 140 So.2d 11 (1962) and Pitre v. State Farm Mutual Insurance Company, 154 So.2d 772, La.App., 3d Cir. 1963 writs refused, 244 La. 1028, 156 So.2d 229 (1963).
*732 The defendant Quincy Mutual Fire Insurance Company, however, stresses the point that the amount provided for medical expenses is included within the limits of the comprehensive coverage by virtue of the language of the policy contract.
With reference to "COVERAGE E COMPREHENSIVE PERSONAL LIABILITY," the insurer is obligated
"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage,"
and, with reference to "COVERAGE F MEDICAL PAYMENTS," the insurer is obligated
"To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical, X-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury caused by accident, * * * if such bodily injury * * * is caused by the activities of an Insured * * *."
However, the policy contains these provisions with reference to certain limitations:
"1. Limits of liability: The limit of liability stated in the Declarations for Coverage E is the limit of this Company's liability for all damages, including damages for care and loss of services, as the result of one occurrence.
"The limit of liability stated in the Declarations for Coverage F is the limit of this Company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury, sickness or disease, including death resulting therefrom, as the result of any one accident."
These provisions do not make it clear that defendant's comprehensive liability includes special allowances for medical payments. The language employed is not explicit in that regard. In fact, these provisions contain no recital that expenses covered by the medical features of the policy are included within the limits prescribed for comprehensive liability. Therefore, under the well-established jurisprudence, if an ambiguity exists in these provisions, such ambiguity must be construed against the insurer.
Therefore, the judgment appealed is amended and recast to read as follows:
It is therefore ordered, adjudged, and decreed there be judgment herein in favor of plaintiff Mrs. Clara Claudell Beavers and against the defendants, James A. Butler and Quincy Mutual Fire Insurance Company, in solido, for the full sum of $34,539.00, with legal interest thereon from judicial demand until paid, subject to the maximum contractual liability of Quincy Mutual Fire Insurance Company in the principal sums of $25,000.00 for comprehensive liability and $500.00 for medical payments.
It is further ordered, adjudged, and decreed there be judgment herein in favor of defendants, James A. Butler and Quincy Mutual Fire Insurance Company, third-party plaintiffs, against Earl David Beavers, third-party defendant, for one-half of the aforesaid amount in which they are condemned unto plaintiff Mrs. Clara Claudell Beavers, that is, $17,269.50, with legal interest thereon from judicial demand until paid; and
It is further ordered, adjudged, and decreed that Earl David Beavers' demands against the defendants, James A. Butler and Quincy Mutual Fire Insurance Company, and the reconventional demands of James A. Butler against plaintiff Earl David Beavers be, and they are hereby, rejected; and
*733 It is further ordered, adjudged, and decreed that expert-witness fees be fixed in the sum of $75.00 each for Dr. William B. Liles, Dr. Ben B. Cobb, Dr. Eugene F. Worthen, Dr. Henry H. Davis, Jr., Dr. Richard C. Curry, Don Kurtz, and Rex Dillingham; in the amount of $50.00 each for Earl B. Williams and Durwood Griffin; and in the amount of $150.00 each for Lester High, Harry W. Rieneke, Jr., and John L. Pfeffer; and
It is further ordered, adjudged, and decreed that the costs, including the cost of this appeal, be paid: one-half by defendants-appellants, James A. Butler and Quincy Mutual Fire Insurance Company, and one-half by plaintiff-appellee Earl David Beavers; and
It is further ordered, adjudged, and decreed that the judgment appealed, as thus recast and amended, be, and the same is hereby, affirmed.
Amended and affirmed.