303 So.2d 779 (1974)
Ida Pearl JOHNSON et al., Plaintiffs-Appellees,
v.
STATE FARM FIRE AND CASUALTY COMPANY, Defendant-Appellant.
No. 4798.
Court of Appeal of Louisiana, Third Circuit.
November 27, 1974.
*781 Leon E. Roy, Jr., New Iberia, for defendant-appellant.
Guillory, McGee & Mayeux by Donald L. Mayeux, Eunice, for plaintiff-appellee.
Before HOOD, CULPEPPER and WATSON, JJ.
WATSON, Judge.
Plaintiffs, Ida Pearl Johnson, John Melvin Johnson, Horace David Johnson and Kenneth James Johnson, are, respectively, the widow and the three major sons of Curley Johnson, who drowned after being thrown into the water from an outboard motor boat operated by Joseph Doucet. Defendant, State Farm Fire and Casualty Company, is the homeowner's liability insurer of Joseph Doucet, whose negligence allegedly caused decedent's death. The parties stipulated that the maximum liability of defendant would be the policy limits of $25,000.
The trial court rendered judgment in favor of plaintiffs, awarding Ida Pearl Johnson $2,500, John Melvin Johnson $3,000, Horace David Johnson $1500 and Kenneth James Johnson $1500, together with stipulated funeral and medical expenses of $1241. In reasons for judgment, the trial court found that the drainage ditch where the accident occurred is not a navigable stream. The trial court concluded that Joseph Doucet was negligent in operating decedent's boat; that this negligence was the sole and proximate cause of the accident resulting in Curley Johnson's death; and that the decedent, Curley Johnson, was not guilty of contributory negligence. On the question of quantum, the trial court found that the decedent did not have a close and affectionate relationship with his wife, that she had sued him for a separation; and that they were not living together. The trial court found that the decedent did not have a close relationship with his three sons by his first marriage, noting that two of the sons lived out-of-state and seldom visited their father. The trial court found that John Melvin Johnson was closer to his father than the other two sons and therefore awarded the larger amount to him.
The defendant, State Farm Fire and Casualty Company, has appealed, contending that the trial court erred as follows:
1. In failing to find that the waterway where the accident occurred was a navigable stream, failing to apply the general maritime law of comparative negligence, and in failing to limit plaintiffs' recovery to pecuniary losses;
2. In finding Joseph Doucet guilty of negligence;
3. In failing to find Curley Johnson guilty of contributory negligence, failing to find that Curley Johnson assumed the risk of the accident, and failing to find that the parties were engaged on a joint mission.
Plaintiffs have answered the appeal, asking that the amount of damages awarded be increased from $9,741 to the policy limits of $25,000, and alleging error in the *782 trial court's failure to make an award to plaintiffs for the pain and suffering of decedent immediately prior to his death.
Therefore, the issues to be considered on appeal are as follows:
(1) was the waterway navigable?
(2) was Doucet negligent?
(3) was the deceased contributorily negligent; did he assume the risk; was there a joint venture?
(4) are the amounts awarded as damages proper?
As to factual findings by the trial court, we review only to determine if there is manifest error; as to quantum, we accord the trial court much discretion.
Facts
The facts are reflected by the testimony of the following witness, which we will review here in some detail.
Joseph W. A. Doucet testified that he is 49 years of age and a resident of Eunice, Louisiana. He is employed as a bookkeeper by the law firm of Guillory, McGee & Mayeux. He was involved in a boating accident on a Saturday in January of 1972 which resulted in the death of Curley Johnson. Earlier that morning, Mr. Doucet had told Mr. Johnson that he would like to go fishing and Mr. Johnson had invited him to go with him. They had known each other five or six years but had never fished together before. Mr. Doucet bought the shrimp that were used as bait but made no other financial contribution to the outing. They left Eunice in the decedent's pickup about 10:00 a.m. They fished from the decedent's aluminum, square-nosed, flat-bottomed boat, about 14 feet long with an 18 or 20 horsepower motor. There were two life jackets in the boat. Mr. Doucet sat in the rear of the boat and operated it. Decedent cranked the boat the first time and thereafter Mr. Doucet started it. The decedent was not seated in the bow of the boat but in the first large seat aft from the bow; he was a large man. Mr. Doucet stated that he himself has an outboard motor and had five or six years experience in operating one, but the control on the decedent's motor was opposite from his. It was a windy day, and Mr. Doucet had on rubber knee boots, coveralls, longjohns and a shirt. The two put the boat in to bait the lines at about 11:00 a.m. and then returned to the pickup for approximately an hour. They went back to check the lines and the accident occurred some twenty minutes later or between 1:30 and 1:45 p.m. They were fishing in a drainage canal in Vermilion Parish, which was approximately 30 feet wide and fairly straight. There was an abandoned relief pump on the edge of the canal, which appeared to be a man-made, dredged, irrigation canal, rather than a natural canal, and was in an area of rice fields, pasture and swamp. As the boat approached the intersection of another canal, Mr. Doucet started to turn to go into the canal to the right and decedent pointed to the left. Mr. Doucet attempted to turn back straight but instead accidently hit the throttle and accelerated the boat. Mr. Doucet was leaning forward with his weight on his feet and both parties were thrown into the water. Mr. Doucet described the accident as follows:
".... I was still on the seat but my weight was on my feet and that's what threw us out of there, when I hit the edge of the boat and with the motor speeding up and everything, then the boat went out from underneath and uah, he was holding on with one hand up front and he fell in." (TR. 26)
Mr. Doucet found that he could not swim because of his boots and clothes. There were nine or ten feet of water and he was able to hop back and forth on the bottom to make it to the shore. He saw the decedent in the middle of the canal where he had surfaced to the middle of his chest. The decedent took a deep breath and said, "whoooh." (TR. 136) Mr. Doucet hollered at him ".... this way Curley." *783 (TR. 87). The decedent turned toward the bank. Mr. Doucet caught a life preserver, turned around and saw decedent sinking again. He then saw decedent with his head just under the water making motions with his hands. The water was very cold. Mr. Doucet went to shore and started toward a house to get help. The body was recovered. It is significant that Mr. Doucet repeatedly testified decedent appeared to be conscious after he fell in the water.
The decedent's boots were introduced into evidence. They were described as 12 to 14 inches in height with an open top and capable of absorbing water.
Copies of Curley Johnson's income tax returns for 1968, 1969 and 1970 were received in evidence. These returns showed gross earnings for Curley and Ida Pearl Johnson as follows:

 1968 $17,132.11
 1969 $13,569.57
 1970 $15,405.34

Felix Louis Johnson testified that he is a brother of the deceased, Curley Johnson; that Curley Johnson lived in Eunice all his life; and that he and his brother were very close. They had worked together at various jobs and had both done pipeline work. According to Felix, the top wage earned by the deceased was approximately $6.40 an hour; he was a dependable worker and kind hearted. Felix testified that his deceased brother, Curley, was very attached to his family and was living with his oldest boy, Melvin Johnson, in the last months before his death. He said Curley was approximately 51 years of age at the time of his death, was healthy, six feet tall and weighed between 230 and 250 pounds. He said his brother could swim and recounted an occasion when he had dived after a watch he had lost on a job. He and Curley worked together 85% of the time and their last job together was in Sulphur, Louisiana, approximately five months before his death. The pipeline work was not steady; he and Curley worked about eight months out of the year. They generally worked away from home and rented rooms, their room and board costing about $10 a day. When they worked, they worked from six to seven days a week, twelve hours a day. John Melvin Johnson and Horace David Johnson sometimes worked with their father. Curley Johnson would go back and forth to visit his wife at every opportunity and told him two days before his death that he had been home with his wife two nights before. He was of the opinion that they had a normal marital relationship and that his brother helped his wife financially. He said he had seen his brother mail money to his wife. He said the two youngest boys often borrowed money from their father, and he thought they relied on their father too much for financial assistance. He said he and Curley and Curley's wife celebrated Christmas in Eunice before his death in January.
John Melvin Johnson testified that he was 28 years of age and a son of Curley Johnson. He had lived in Eunice all of his life, was married and had four children. He was a heavy equipment operator in pipeline work and earned between $16,000 and $17,000 a year. He had moved in his father's house and taken up the payments about a year before his death. He and his father were very close. His father could swim in a dog paddling fashion. His father and his stepmother were separated before his father's death, his stepmother living in Mamou and his father living ten miles away in Eunice. At the time of trial, Melvin was working in Cheyenne, Oklahoma and his brother Horace was working on a tug offshore. His father and stepmother had both signed the deed in order for him to get title to his father's house. He said his father was close to all his sons.
Kenneth James Johnson testified that he was 21 years of age. He is a truckdriver and had moved to Florida shortly before his father's death. He said he fished with his father a lot and that his father had helped him financially. He said his father could swim.
*784 Ida Pearl Fontenot Johnson, the decedent's widow, testified that she had six children by her first husband, and two by her second husband. The decedent was her third. She had no children by him. She lived as husband and wife with decedent for thirteen years. They married in November of 1968 in Mamou, Louisiana. She often fished with her husband. They had differences primarily because he was too generous with the children. Although she moved to Mamou from Eunice in January of 1971 because both her parents were ill, her husband never stopped coming to see her. Their relationship did not change, and he would drive to her home at night when he could. He continued to support her. Her mother died in July of 1971 and her father in November of 1971, and she had planned to move back to Eunice after her father's death. She and her husband were together for Christmas in December of 1971. When she first left Eunice in January of 1971, her husband was not working and she applied for welfare. An attorney filed a paper for a separation to make her eligible for welfare and food stamps, but she never obtained a legal separation and she said she had had no intention of doing so. Her petition for a separation from bed and board from Curley Johnson was introduced in evidence as "D-2". It showed a filing date of January 22, 1971. Her husband went back to work in February and March and contributed between $300 and $500 a month to her support and that of the three stepchildren living at home. When she and decedent sold their house to Melvin, each of them got $500. Her husband helped her move to Mamou. He always gave her cash. He was paying the note of $86 a month on the car she was driving and also would sometimes pay her rent of $50 per month. He did not pay her any fixed amount, but she and the children never wanted for anything. She was also drawing $131 from welfare and $108 a month in food stamps. She paid $27 a month for the food stamps. She occasionally worked as a waitress at the Holiday Restaurant in Mamou. Her sister, Mrs. Ethel Piersall, of Mamou, helped her care for her mother. She did not know whether or not her husband could swim; they had never discussed the subject. Her husband drew unemployment when he was not working. To her knowledge, the last time her husband saw his son Horace was at Christmas of 1970.
John Landry, chief criminal deputy of the Vermilion Parish Sheriff's Department, testified that he was on duty on January 8, 1972, a Saturday, and received a report of Curley Johnson drowning approximately five miles northwest of Kaplan. Deputy Landry went with two trustees from the jail to recover the body. He was directed to a drainage canal or coulee next to the Channel Three television tower. The canal did not have a name, and he estimated it at 20 feet wide with a depth of approximately five feet. The body was recovered at the intersection of another canal, the second canal being approximately the same size. The area was wooded. Chief Deputy Landry testified that he did not measure the depth of the water but merely estimated it. The water could have been as deep as nine feet. The body was that of a large, heavy man wearing boots.
Navigability
The first question for decision is whether the trial court erred in finding that this drainage canal was not a navigable stream and in applying LSA-C.C. art. 2315.
The test of whether a stream is navigable has been precisely described by Judge Ayres in Beavers v. Butler, 188 So. 2d 725 (La.App. 2 Cir. 1966) writ refused 249 La. 739, 190 So.2d 242:
"In law, rivers and streams are regarded as public navigable rivers which are navigable in fact, and they are navigable in fact when they are used or are susceptible of being used in their ordinary condition as highways of commerce over which trade or travel is, or may be, conducted in the ordinary mode of trade or travel on water. The Daniel Ball v. United States, 77 U.S. (10 Wall.) 557, 19 L.Ed. 999 (1871)." 188 So.2d 727.
*785 Defendant-appellant contends that the drainage canal which was the location of the accident was a navigable stream, specifically Bayou Quer de Torte or a tributary thereof, but the evidence in the record to sustain this contention was not persuasive to the trial court and is not persuasive on review. Decedent's brother, Felix Louis Johnson, said that his brother died in Bayou Quer de Torte (or Turtle Tail Bayou), but he did not actually visit the scene of the accident and first saw his brother's body at the funeral home in Kaplan. Chief Deputy Landry testified that the canal was in the general area of Bayou Quer de Torte, and he was told that the canal connected to this bayou. However, his statement was, "I don't know that for a fact," (TR. 279). Although Landry said that a 30-foot boat could, in his opinion, operate in the canal, he was not qualified as an expert in this area. Defendant contends that there was other water traffic, but the only evidence to this effect was Mr. Doucet's statement that he saw a man and a small boy in one boat an hour-and-a-half after the accident. Defendant contends that the stream was affected by the ebb and flow of the tide, but the evidence in the record does not support this contention. There is one statement by Mr. Doucet that ".... the water was coming up ...." (TR. 128). The record does not establish that this artificial canal was a navigable stream. There is no evidence that the canal was used as a highway of commerce. It cannot be presumed that it was navigable. Robichaux v. Theriot, 242 So.2d 644 (La.App. 1 Cir. 1970). There mere fact that the water was deep enough to float a pirogue or a flat-bottomed fishing boat does not prove navigability. St. Mary Parish Land Company v. State Mineral Bd., 167 So.2d 509 (La.App. 1 Cir. 1964); writ refused 246 La. 908, 168 So.2d 821; Sinclair Oil & Gas Company v. Delacroix Corporation, 285 So.2d 845 (La. App. 4 Cir. 1973). The trial court decided this question of fact against defendant's contention, and we find no manifest error. Therefore, the canal or ditch is not considered navigable for purposes of this appeal.
Negligence of Doucet
Whether Joseph Doucet was negligent is another factual question. We find no manifest error in the trial court's determination that Joseph Doucet was negligent under the circumstances. He had been operating the motor for some time prior to the fatal accident and should have been aware of its method of operation. Not only did he hit the accelerator but his weight was on his feet, something usually avoided in a boat. His carelessness constituted negligence, and, as he admitted, his action resulted in decedent falling into the water and drowning. Beavers v. Butler, supra.
Contributory Negligence, Assumption of Risk and Joint Venture
Further, we find no manifest error in the determination that the decedent was not guilty of contributory negligence. Contributory negligence is an affirmative defense, proof of which is a question of fact to be determined by the trier of fact. Dewese v. Hartford Accident & Indemnity Company, 295 So.2d 574 (La.App. 3 Cir. 1974); writ refused 299 So.2d 794. Although decedent signaled for the boat to continue ahead, he could not anticipate that Joseph Doucet would instead accelerate the boat. Decedent's signal did not cause or contribute to the occurrence of the accident. It was Joseph Doucet's unexpected response to the signal which threw both into the water. Although decedent was not wearing a life jacket, we do not believe that this constitutes contributory negligence. There was a jacket available in the boat, and this is the only requirement normally made of boaters, particularly those in the quiet occupation of fishing. One who acts in the manner of an ordinary reasonable fisherman is not negligent.
*786 Similarly, we do not find that decedent assumed the risk of the accident by his failure to wear a life jacket. Regardless of whether or not he could swim, and the weight of the evidence is to the effect that he could, he probably would have been unable to do so in his clothes and boots.
As to the joint venture theory advanced by defendant, which contends that Mr. Doucet's negligence should be imputed to decedent, we do not find that the requisite of an equal right to control the operation of the boat is met in this case. Little v. Mississippi Chemical Express, Inc., 285 So.2d 267 (La.App. 3 Cir. 1973); writ denied 288 So.2d 357. The fact that decedent indicated a direction for the boat to proceed is not sufficient. Rills v. Southern Bell Telephone Company, 289 So.2d 232 (La.App. 1 Cir. 1973); Hicks v. Alphonse, 294 So.2d 602 (La.App. 4 Cir. 1974).
Damages
As to the quantum, plaintiffs contend that the trial court erred in not making an award for decedent's pain and suffering prior to his death. We note that, although Ida Pearl Johnson asked damages both individually and as administratrix of decedent's estate, the only award made to her is individually in the amount of 2500.
In view of the reasons assigned by the trial court, we believe that this award was for loss of love and affection. We believe that the amount awarded is within the "much discretion" of the trier of facts and we decline to increase this amount. Bitoun v. Landry, 302 So.2d 278 (La., 1974). However, we believe that the trial court erroneously failed to allow recovery for the deceased's pain and suffering. Also we do not believe that an award was made for loss of future support. Where no recovery has been allowed for a particular item of damages, the error or oversight may be remedied on appeal. Simmons v. Travelers Insurance Company, 295 So.2d 550 (La.App. 3 Cir. 1974); writs refused, 299 So.2d 795, 796.
In view of the evidence as to decedent's considerable struggles in the water prior to his death, an award to his estate for his pain and suffering is proper. Barrois v. Service Drayage Company, 250 So. 2d 135 (La.App. 4 Cir. 1971); writ denied 259 La. 805, 806, 253 So.2d 66. We believe an award of $2500 for this item of damages is appropriate. LeBlanc v. Estate of Blanchard, 266 So.2d 918 (La.App. 4 Cir. 1972); writ refused 263 La. 618, 268 So.2d 677. Compare Hoffman v. All Star Insurance Corp., 288 So.2d 388 (La.App. 4 Cir. 1974); writ refused, 290 So.2d 909, where the sums of $5,000, $2,000, and $1,000 were variously awarded as damages for minor injuries and the fear of drowning.
Also, in connection with quantum, the trial court found that decedent ".... did not contribute very much, if anything, to her [his widow's] support during his lifetime." (TR. 37). Therefore, the trial court apparently included no damages for loss of future support. We believe the failure to make an award for this item to be error, since loss of support is an item of damages even in cases where the deceased was "a most unsatisfactory husband" and was a poor wage earner (which is not the situation in the present case). Howard v. Hardware Mutual Casualty Co., 253 So.2d 555 (La.App. 1 Cir. 1971); writ denied, 260 La. 19, 254 So.2d 620.[1]
Decedent and his wife had gross earnings according to their tax returns as follows: 1968, $17,132.11; 1969, $13,569.57; 1970, $15,405.34. Decedent died before his 1971 return was due.
Decedent and his widow were legally married and he had a legal obligation to support his wife. There is some evidence in the record that decedent in fact *787 supported his wife, although the trial court concluded the support was minimal. We do not reverse this factual finding; however, the widow is still entitled to recovery for loss of support. She had the right to take legal steps to secure support, if it were not voluntarily furnished. In view of decedent's age of 51 and the fact that he earned a good income, the widow had an expectation of substantial future support. We conclude that Mrs. Johnson is entitled to an award of $7,500 for her loss of future support. Waters v. Southern Farm Bureau Casualty Ins. Co., 212 So.2d 487 (La.App. 3 Cir. 1968); writ refused 252 La. 900, 214 So.2d 720.
For the foregoing reasons, the decision of the trial court will be affirmed but amended to provide recovery of the additional items of damage. We note that, although Mrs. Johnson is referred to as administratrix of her husband's estate, there is no evidence in the record concerning her having qualified in this capacity. Therefore, the award for deceased's pain and suffering will be ordered paid to his heirs and will be shared by them according to law.
It is ordered, adjudged and decreed that there be judgment against the defendant, State Farm Fire and Casualty Company, and in favor of plaintiffs, in the capacities noted and in the amounts stated, as follows:

Ida Pearl Johnson:
 Loss of love and affection $2,500.00
 Loss of future support 7,500.00
Melvin Johnson 3,000.00
Horace Johnson 1,500.00
Kenneth Johnson 1,500.00
Ida Pearl Johnson, Melvin
Johnson, Horace Johnson, and
Kenneth Johnson, heirs of the
deceased, Curley Johnson:
 Funeral and medical expenses 1,241.00
 Pain and suffering of the
 deceased 2,500.00
Total $19,741.00

together with legal interest from date of judicial demand until paid.
All costs of this appeal are assessed to defendant, State Farm Fire and Casualty Company.
Amended and affirmed.
HOOD, J., dissents being of the opinion that plaintiffs are barred from recovery by contributory negligence or assumption of risk on the part of the decedent.
NOTES
[1] Shepard's Louisiana Citations, Case Edition, 1974, incorrectly indicates this case as "vacated", apparently confusing it with 251 So. 2d 642.