365 So.2d 1174 (1978)
STATE of Louisiana ex rel. William J. GUSTE, Jr., and Parish of St. Landry, Plaintiffs-Appellees,
v.
TWO O'CLOCK BAYOU LAND COMPANY, INC., et al., Defendants-Appellants.
No. 6768.
Court of Appeal of Louisiana, Third Circuit.
December 20, 1978.
Writ Refused February 9, 1979.
*1175 Dubuission, Brinkhaus & Dauzat, Jerry J. Falgoust, Opelousas, for defendants-appellants.
David C. Kimmel, Asst. Atty. Gen., Baton Rouge, Morgan J. Goudeau, III, Dist. Atty., Opelousas, for plaintiffs-appellees.
Before DOMENGEAUX, WATSON and GUIDRY, JJ.
WATSON, Judge.
Plaintiffs, the State of Louisiana and the Police Jury of the Parish of St. Landry, asked that defendants, Two O'clock Bayou Land Company, Inc., and its lessee, Creighton James Nall, be enjoined from maintaining a cable across Two O'Clock Bayou. Plaintiffs also sought a declaration that the stream is navigable and subject to public use. The trial court declared the stream navigable and granted the permanent injunction. Defendants have appealed.
The question presented is whether the bayou is navigable, entitling the Parish and the State to enjoin its obstruction by privately owned barriers.[1] LSA-C.C. art. *1176 453; LSA-R.S. 14:96, 97; Discon v. Saray, Inc., 262 La. 997, 265 So.2d 765 (1972).
Two O'Clock Bayou runs roughly north and south through St. Landry Parish in the Atchafalaya Basin Swamp area, crossing sections 14 and 13, T-6-S, R-6-E, and sections 11 and 12, T-6-S, R-7-E. The bayou, at one time, connected with Darbonne Bay on the north and Craft Lake on the south, but dams have now closed off boat access to these areas.[2] Two O'Clock Bayou crosses Cowan Bay and Close Lake. A recent dam was built by a pipeline company roughly halfway between Close Lake and Craft Lake.
In 1808, the bayou appeared on the Darby survey as an unnamed tributary feeding into Bayou De Grasse. Two O'Clock Bayou's northern portion, above Cowan Bay, has apparently moved half a mile to the west. Although it was not meandered by Darby, defendants' expert forester, Lewis C. Peters, admitted that the bayou could in fact have been navigable in 1808. Darby also failed to meander Bayou Courtableau, a primary navigable stream in the area. At times, in the intervening years, the bed of Two O'Clock has been dry enough to allow germination of cypress trees. The younger trees are approximately 100 years old, showing that the bed was dry 100 years ago. The stumps of the older cypress trees were about four hundred years old when cut in the early nineteen hundreds. Photographs in evidence show large trees and stumps in the bayou, but there is a passage space 10 to 12 feet wide between the old cypress stumps. (TR. 112). The water level at the time the photos were taken was admittedly low.
Creighton James Nall, the lessee, testified in deposition that there are pilings and a trestle at Cowan Bay which he believed to be the remnants of a dummy railroad line used for timbering operations. Nall testified on oral examination that he placed the cable at the northern end of the bayou just south of the old Missouri Pacific right of way to control access by the public. A dam had been built just north of the cable's location some ten years before by Walter Buchanan. Nall said the shallowest portion of the bayou is from 3½ to 7 feet deep. At the narrowest part of the bayou, where there are old pilings at the abandoned railroad right of way, there is an opening 8 to 10 feet wide. (photograph # 15; TR. 111).
Preston Scruggins testified in deposition that he helped build the railroad trestle at Cowan Bay around 1935, when there was only a foot of water in the bayou. According to Scruggins, Two O'Clock was only suitable for pirogue use at that time.
Joe Elder testified in deposition that he is a lumberman and had a mill at Bayou Close near Lottie in 1931. His company harvested timber around Two O'Clock Bayou, snaked the logs to the bayou and floated them out behind small motor boats. The logs were tied together in rafts or cribs about four feet wide.
Fifteen people attested to their use of Two O'Clock Bayou for fishing over various periods of time, commencing as early as 1930. Emile Miller testified that he had used the bayou for fishing for 26 or 27 years. Ernie Kovack did sport fishing in the bayou, going as far south as Craft Lake in a boat with a two foot draft. A. K. Miller said he had fished the bayou since around 1936 and had seen many commercial fishing boats there.
W. A. Welch has utilized the bayou for fishing since the mid fifties and has traversed the bayou its entire length beginning at Craft Lake on the south. Welch witnessed use of the bayou by a motion picture company filming "Nevada Smith". The company operated barges on the bayou *1177 measuring about 12 feet wide and twenty feet long. Their draft was estimated by Welch at about three feet. According to Welch, the bayou is about three feet deep in the shallowest part of the main channel at low water.
Arthur Roy Shay said he had used the bayou for fishing since 1948, using motors up to 50 horsepower in size. A dam at the northern crossing of old highway 190 and the Missouri Pacific Railroad now obstructs passage into Darbonne Bay on the north. Shay measured a spot 37 feet deep in the bayou where it empties into Close Lake on the south. Another spot at the northern edge of Cowan Bay is twenty feet deep. Shay estimated the average depth of the bayou at nine feet. In his opinion, based on frequent use of a depth finder, the bayou's depth fluctuates three or four feet during periods of high water.
Sherby J. Skrantz testified that he had been familiar with Two O'Clock Bayou since 1949 when he assisted his father in commercial fishing operations there, using a "Joe-boat" four feet wide and fourteen feet long. They caught two to three hundred pounds of fish a night, fishing as far south as Craft Lake. He knew of four other commercial fishermen who used the bayou. Some garfish from Craft Lake weighed in at up to 110 pounds.
In evidence are 1860 patents to sections 14 and 11 and part of section 13 issued by the Louisiana Land Office.
Tax receipts were introduced in evidence to prove that Two O'Clock Bayou Land Company had paid taxes on all of section 13 and 14, T-6-S, R-6-E, without any deduction for a navigable waterway. The land company also paid taxes on the part of section 11, T-6-S, R-7-E, crossed by the bayou, but the tax receipt notes that this W ½ of the W ½ of section 11 "Includes 13 acres used by the U.S. Government for levee and high level crossing rights-of-way." (TR. 44). Payment of taxes on section 12, T-6-S, R-7-E, where the southern part of the bayou empties into Craft Lake is not claimed by the land company.
Savano Bernard Langlois, an expert surveyor, testified that Two O'Clock Bayou appears in its present location south of Cowan Bay on Darby's 1808 survey notes and the U.S. geodetical map (Exhibit 8) but not north of Cowan Bay. The northern portion of Two O'Clock Bayou is a new stream a half mile to the west. In Langlois' opinion, the 1829 and 1842 maps and surveys indicate that Two O'Clock Bayou was not considered navigable when they were made.
The trial court concluded that the bayou has an average depth of nine feet, and averages 18 to 30 feet in width.[3] The trial court made a factual finding that the bayou is capable of sustaining commerce despite occasional obstructions in its flow.
Navigability is not presumed; the burden of proof rests with the party seeking to establish it. Johnson v. State Farm Fire and Casualty Company, 303 So.2d 779 (La.App. 3 Cir. 1974); Burns v. Crescent Gun & Rod Club, 116 La. 1038, 41 So. 249 (1906). The trial court concluded that plaintiffs had sustained the burden of proving Two O'Clock Bayou to be a navigable stream.
A body of water is navigable in law when it is navigable in fact. State v. Jefferson Island Salt Mining Co., 183 La. 304, 163 So. 145 (1935) cert. den. 297 U.S. 716, 56 S.Ct. 591, 80 L.Ed. 1001, rehearing denied 297 U.S. 729, 56 S.Ct. 667, 80 L.Ed. 1011. The factual question turns on whether the evidence shows a body of water to be suitable by its depth, width and location for commerce. However, lack of commercial traffic does not preclude a finding of navigability. State v. Capdeville, 146 La. 94, 83 So. 421 (1919) cert. den. 252 U.S. 581, 40 S.Ct. 346, 64 L.Ed. 727. A stream, to be navigable, must be usable for commerce in its natural state or ordinary condition. Madole v. Johnson, 241 F.Supp. 379 (1965); The Daniel Ball, 10 Wall. 557, 19 L.Ed. 999 *1178 (1870); Delta Duck Club v. Barrios, 135 La. 357, 65 So. 489 (1914). Construction of a dam across a bayou does not change its status as a navigable stream. Beavers v. Butler, 188 So.2d 725 (La.App. 2 Cir. 1966) writ refused 249 La. 739, 190 So.2d 242. A body of water can be navigable despite natural or man-made obstructions. Terrebonne Parish School Board v. Texaco, Inc. 178 So.2d 428 (La.App. 1 Cir. 1965) writ refused 248 La. 465, 179 So.2d 640, cert. den. 384 U.S. 950, 86 S.Ct. 1568, 16 L.Ed.2d 546.
In the instant case it is difficult to determine whether Two O'Clock Bayou was navigable in its ordinary condition because the bayou is not presently in a natural state, having been dammed, bridged and otherwise interfered with over a period of time.
The question of navigability of Two O'Clock Bayou in 1812 is only pertinent to the question of ownership of the bed of the bayou. It has no relevance to the question of whether or not passage on the stream can be obstructed by defendants. Begnaud v. Grubb & Hawkins, 209 La. 826, 25 So.2d 606 (1946); Discon v. Saray, Inc., supra. Therefore, the evidence that parts of the bayou bed were dry as recently as 100 years ago does not affect the State's right to enjoin its obstruction if it is in fact a navigable waterway. Discon v. Saray, Inc., supra. Here, unlike the situation in National Audubon Society v. White, 302 So.2d 660 (La.App. 3 Cir. 1974) writ denied 305 So.2d 542 (La., 1975) and Vermilion Corp. v. Vaughn, 356 So.2d 551 (La.App. 3 Cir. 1978) writ den. La., 357 So.2d 558, the waterway is not privately constructed and does not lie wholly within the confines of the property owned by the defendant land company.
The evidence allows a reasonable inference that Two O'Clock Bayou is navigable in fact, except for various man-made obstructions. It has in the past sustained commercial fishing and logging, which are types of commerce. There is no prescription right to obstruct navigation on a navigable stream. Ingram v. Police Jury of Parish of St. Tammany, 20 La.Ann. 226 (1868). The bayou, in its natural state, afforded a channel for navigation although there are now certain difficulties in the form of natural and man-made barriers. The fact that bridges have been built, with or without legal authority, and there is a resulting accumulation of timber, which, to some extent, obstructs and impedes navigation does not preclude a finding that a stream is navigable. Goodwill v. Police Jury, 38 La.Ann. 752 (1886). See the discussion of navigability in fact and law in DAlbora v. Garcia, 144 So.2d 911 (La.App. 4 Cir. 1962) cert. den.
The trial court's conclusion that Two O'Clock Bayou is navigable is not manifestly erroneous and therefore must be affirmed.[4]
For the foregoing reasons, the judgment of the trial court herein is affirmed at the cost of defendants-appellants.
AFFIRMED.
NOTES
[1] Title to the bed of the bayou is not at issue. Obstruction of the bayou can be enjoined if it is navigable, D'Albora v. Garcia, 144 So.2d 911 (La.App. 4 Cir. 1962) writ denied; Discon v. Saray, Inc., 262 La. 997, 265 So.2d 765 (1972). Here, in contrast to Vermilion Corp. v. Vaughn, 356 So.2d 551 (La.App. 3 Cir. 1978) writ denied 357 So.2d 558 and National Audubon Society v. White, 302 So.2d 660 (La.App. 3 Cir. 1974) writ denied 305 So.2d 542 (La., 1975) the bayou is not artificial and its bed does not lie wholly within the confines of defendants' land. See 33 La.Law Review 172.
[2] From Craft Lake, Adams Bayou leads into Mary Cane Lake, which feeds into Big Bayou De Grasse and Bayou Big Graw. Darbonne Bay connects with Bayou Courtableau.
[3] The latter estimate is apparently based on study of the various maps and exhibits. See the testimony of Peters at TR. 123 and 124 that the bayou's width at one point was seventy-five links or fifty feet.
[4] Testimony was taken at the hearing for a preliminary injunction which was denied by one division of the trial court because of the close question presented. The hearing on the merits was scheduled before another division of the trial court, but counsel elected to submit the matter on the record and depositions. The author of the opinion believes the manifest error rule to be applicable. Gradney v. Vancouver Plywood Co., Inc., 299 So.2d 347 (La., 1974); State Through Dept. of Highways v. Mclnnis, 360 So.2d 887 (La.App. 3 Cir. 1978). No contention to the contrary has been made by appellants.