### SWANSON et al. v. BERGERON et al.
### 1 Div. 848.

#### Supreme Court of Alabama.
#### May 9, 1935.

Stevens, McCorvey, McLeod, Goode & Turner, of Mobile, for appellants.

Geo. A. Sossaman, of Mobile, for appellees.

THOMAS, Justice.

The suit in equity was to establish a disputed boundary line between coterminous landowners.

The bill of appellants alleges the sale to appellants of certain property and the execution of a deed indicating that the north line of the property conveyed runs north 87 degrees 45 minutes west along the north line of lot 1 of the McVoy tract 1,106 feet in depth; that "the north boundary line of their property is a line running from the point of beginning on the west side of Cedar Point Road, being the point of intersection of said road with the north boundary of Lot 1 of the First Subdivision of the McVoy Tract, which runs 87 degrees and 45 minutes west along the true north line of said Lot No. 1, and that said respondents dispute this location of said line and contend that said line runs from said point of beginning north 78 degrees and 45 minutes west rather than north 87 degrees and 45 minutes west."

Respondents allege they are in possession of the property which is visualized by the map exhibited, showing the tract purchased by the Bergerons and subdivided. Respondents allege the sale of lots 1 and 2 from that tract, which is indicated by the exhibit illustrating the answer and cross-bill (Grimsley v. First Ave. Coal & Lumber Company, 217 Ala. 159, 115 So. 90); that the deed did not accurately describe the property sold, and by mutual mistake the angles of the line running from Cedar Point Road west to the bay were erroneously placed at 87 degrees rather than 78 degrees, and that by reason of such mutual mistake the deed conveys the southeast triangular part of lot 1, all of lot 2, and the northwest triangular part of lot 3, instead of all of lots 1 and 2, as was sold and intended to be conveyed.

When the whole record is considered, appellees are shown to have purchased the large tract that was well marked by ancient boundaries—on the south by an old ditch, and on the north by an old ditch and blazed line which constituted the north line of the McVoy tract.

The deed to Bergeron, appellee, shows that the property was bounded on the north by the north line of the McVoy tract and on the east by the Mobile & Cedar Point Railroad;

etc. The controverted question, then, was the angle at which this line was run—whether 78 degrees or 87 degrees—as per the respective insistences. The Swansons purchased either lots 1 and 2 according to the map, or the north ten acres of the Bergeron property up to the McVoy line, which would embrace parts of lots 1 and 3 and all of lot 2, if complainants' insistence as to the angle of 87 degrees be correct. This is the controverted question of fact presented by the evidence.

 The testimony was before the trial judge, and within the recognized rule that indulges a favorable inference in favor of the trial court, where the witnesses are examined orally. Hodge et al. v. Joy et al., 207 Ala. 198, 201, 92 So. 171.

The question recurs: Is there evidence to show mutual mistake of the parties in the description employed in the deed from Bergeron to Swanson? The trial court held there was sufficient evidence of such mutual mistake. The deed recites that the north line of the Swanson property so purchased runs 87 degrees and 45 minutes west along the north line of lot 1 of the McVoy tract, and not merely a part of the north line of the land sold, as appellants insist. The Bergerons contend that the angle was 78 degrees and 45 minutes west, which would embrace all of lots 1 and 2 and no part of lot 3. The deed to Bergeron and wife describes this north line as "That certain parcel of land situated on the West boundary of the Mobile & Cedar Point Railroad in Lot No. 1 of the First Division of the McVoy Tract, beginning at the Northwest intersection of said Railroad and the North boundary of said Tract, thence running along the West side of said Railroad South 15 degrees West 13 chains to a stake, thence due West 17 chains to a stake placed in a Bayou, thence North 15 degrees East and parallel with said Railroad 13 chains to a stake, thence due East 2 chains to a stake on the East side of a Bayou, thence due East 15 chains to the place of beginning. *Said property being bounded on the North by the North line of the McVoy Tract*, on the East by the Cedar Point Railroad, and on the South and West by lands now or formerly belonging to the heirs of Daniel Kelly." (Italics supplied.)

 It is thus indicated that the deed did not describe the line and angle as contended by either party thereto, and shows a mutual mistake in the description employed. It was the duty of the court, under the respective pleadings and evidence, to ascertain and establish the intention of the contracting parties, and to establish the controverted line.

 When the evidence of Swanson is examined as a whole, there is a tendency to convince the court to the conclusion that he intended and understood that he was purchasing lots 1 and 2; that he took possession of the north ten acres "somewhere around where that piece of fence was"—"the fence that was already up there by the old ditch;" that he thought the line fixed by his deed and the McVoy line were the same line. And as we read Swanson's testimony, it is evident that he was under the impression that he was purchasing lots 1 and 2 and went into possession of that property, and, thereafter, being informed by Mr. Gaston that the McVoy line did not run along the old ditch, but ran due east and west, they moved their south line so as to include a part of lot 3.

A significant fact to be considered is that the house upon the lots purchased faced the road, but the fences, being laid according to Swanson's contention, made the house and fence lines face at different angles.

We conclude that it is of a high degree of evidentiary value that Swanson took possession to the old line, as established by the court and according to Bergeron's insistence, and later changed his line at the insistence of Gaston, though he had insisted to Gaston that he had correctly taken possession of the lots or lands purchased, which he thought were fixed by his deed as the true McVoy line on the north. The line, as established, was according to the construction of its descriptive terms, subject to the parol evidence rule. Wood v. Foster, 229 Ala. 430, 157 So. 863; Newell et al. v. Armstrong (Ala. Sup.) 161 So. 244.

The trial court saw and heard the witnesses, observed their demeanor and reached the conclusion that the survey and map were correct, and established the line so as to convey lots 1 and 2, which seems to us to be or to have been the intent of the parties when the purchase and sale were made.

The judgment of the circuit court is free from error and is due to be affirmed.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.