69 So.2d 434

PARKMAN et al. v. LUDLUM.

4 Div. 765.

Supreme Court of Alabama.

Dec. 17, 1953.

Rehearing Denied Jan. 21, 1954.

W. Perry Calhoun, Dothan, and Halstead & Whiddon, Headland, for appellee.

T. E. Buntin, Dothan, for appellants.

MERRILL, Justice.

Appellants, complainants below, have appealed from a decree establishing a boundary line. Appellants and appellee have conveyances to lands in the City of Dothan that are contiguous and they derived title from a common source, Sam. H. Adams. Adams conveyed directly to appellee, Ludlum, but appellants trace their title back to Adams through three mesne conveyances. The question of adverse possession is not here involved.

The properties comprise the south side of a block fronting South Street between Oates Street on the west and Foster Street

on the east. The total footage from the intersection of South and Oates Streets to the intersection of South and Foster Streets along the north side of South Street, measuring from the back of the curbs at each intersection, is 379.1 ft. Appellants' deed calls for 210 feet along South Street; appellee's deed calls for 190 feet along South Street, a total of 400 feet, necessarily making an overlap of 20.9 feet. It is the east boundary of the Parkman (appellants) lot and the west boundary of the Ludlum (appellee) lot, or the North and South line between the lots which is disputed. Complainants set out their title in their bill, alleged that appellee had built a fence on their property and prayed that the court establish the boundary line between the properties at a point on South Street, define and locate the line and establish judicial markers on the line so defined. Appellee answered, setting up his title and claiming the true line to be west of where complainants asserted it to be; that the west line of his property, the W. J. Smith lot, is a well defined and long established line and that he has been in possession of all the lands up to said well defined and established boundary line since the property was conveyed to him.

The deed to appellant, dated January 1, 1946, described the property as follows:

"One house and lot in the City of Dothan, Alabama, located on the east side of South Oates Street at the north side of South St., and further described as follows: Beginning at the southwest corner of the lot formerly owned by C. E. Harmon, now the property of J. W. Gilbert, thence running along the east side of Oates St., Seventy (70) ft. to South St.; *thence east along the north side of South St. Two Hundred Ten (210) ft.; thence north along the west boundary line of lot formerly owned by W. J. Smith, now owned by Sam. H. Adams, Seventy. (70) ft.*; thence west Two Hundred Ten (210) ft. parallel with South St., to the starting point. Said lot containing one third acre, and being the same property described in deed from Sam H. Adams and wife Ruth Adams to James

C. Taylor dated Aug. 5th, 1942, and recorded in deed Book 71 at page 342 of the Houston County Probate Office, and known as the former residence and lot of Annie H. and J. P. Adams. * * *." (Italics supplied.)

Appellee's deed dated August 17, 1950, described his property as follows:

"One vacant lot situated on the west side of South Foster Street in the City of Dothan, Houston County, Alabama, and more particularly described as follows: Commencing at the crossing of Foster and South Streets and *running west half way to Oates Street; thence North 70 yards to lot formerly known as the McKeachern lot, but now known as the Faulk lot*; thence east to Foster Street; thence South back to starting point, containing one acre, more or less. Said lot more particularly described as follows: Commencing at the north-west corner of Foster and South Streets, and running thence northward along the west boundary line of Foster Street 215 feet to Faulks lot; thence westward along the line of Faulk's lot and parallel with South Street 190 feet; *thence Southward parallel with Foster Street 215 Feet to the north boundary line of said South Street; thence Eastward along the north boundary line of South Street 190 feet to the starting point.*" (Italics supplied.)

The cause was submitted on bill and answer and testimony taken orally before the court. The decree was in effect a finding in favor of appellee.

Appellants' assignment of error 4 urges that the court erred in using a fictitious landmark or monument in fixing the boundary rather than metes and distances as fixed on the deeds. This assignment is directed to the following paragraph of the decree:

"It is ordered, adjudged and decreed by the Court that the true boundary line between the 'Parkman Lot' and the 'Ludlum Lot', the lots owned by the plaintiffs and defendant in this case

and involved in this suit, be and the same is hereby established as a straight line beginning at the northern extremity of the old brick foundation of a barn once located thereon at the southeast corner of the J. W. Gilbert lot and extending South along said brick foundation, the old rusted wire fence and rotten or decayed fence posts, above and below the surface of the ground to South Street in the City of Dothan, Alabama."

The J. W. Gilbert mentioned in appellants' deed, called as a witness for appellee, testified that he purchased the lot lying north of the Parkman lot in 1917 and lived on it for several years; that he built a cypress picket fence from his southeast corner north to Savannah Street (which is the north boundary of the block in which the property lies and presumably is parallel to South Street); that he had a paved stall in the southeast corner of his lot and the pavement was still there; that a corner of a barn joined his southeast corner; that the barn was built on a brick foundation, the east side of which extended south about 30 feet and from the barn there was a fence extending south to the north side of South Street; that this line was straight all the way through the block from South Street to Savannah Street. He further testified that the barn had been moved and he did not know whether the fences were up or not, except that he did identify from a picture the cypress picket fence which had been the boundary on his property. He also stated that the W. J. Smith lot, which was east of his lot and the Parkman lot was enclosed by fences, one of which was the fence extending from the barn to South Street.

Mr. J. N. Massey, a witness for appellee, testified that he had known the land since 1917; he knew about the barn and the fence which extended both north and south from the corners of the barn and he cultivated the land up to the fence for several years.

The appellee testified that he erected his fence from the southeast corner of the Gilbert lot, along the brick foundation south to South Street following old fence posts which had rotted to the ground. He had been familiar with the property since 1945 and an old fence had extended from the Gilbert corner south to South Street when he first knew the property. He had moved opposite the property in 1945 and still lived on the south side of South Street.

Mr. J. W. Parkman, testifying for complainants, stated that they went into possession of the 210 ft. called for by their deed; that no one pointed out the boundary lines to them when they bought; that he did not know anything about the W. J. Smith lot except that he saw it mentioned in the deed; that he saw the old fence on the Gilbert lot but no fence extended to South Street when he purchased the lot.

The surveyor, Mr. Milton Lurie, called by complainants, found no evidence of fences or old landmarks on the line claimed by appellants, but did find evidence of a boundary line 183 feet east of the back of the curb on Oates Street, which was a projection of the line running south from Savannah Street, along the paling fence on the Gilbert property. He further testified that he could find no information as to the width of either Oates or Foster Streets in the years 1918–21 (about the time title to all the property came into the Adams family). Also there was no evidence of when the curbs were installed on Foster and Oates Street.

■ It is clear that the court was not using a fictitious landmark when the decree mentioned the brick foundation of the barn at the Gilbert corner and the old line of fence posts to South Street as monuments in determining the true boundary. In addition to the evidence of the witnesses, two pictures showing the fences are before us and one of them shows the brick foundation of the barn.

■ Assignments of error 1, 2, 3, 6 and 7 complain that the court erred in its conclusions of law, its application of the law, in entering the decree or that the decree was not supported by the evidence. We think the evidence noted above supports the conclusion reached by the trial court.

Appellants' other assignment of error, No. 5, is that the court erred in finding for appellee in the face of an antedated and prior recorded deed in conflict with the appellee's deed, and it is insisted that where there is a common source of title, the older deed prevails in disputed boundary cases. Dunn v. Stratton, 160 Miss. 1, 133 So. 140; Dupont v. Percy, La.App., 28 So.2d 359.

 We do not think this principle is applicable to the instant case. It is true that title to all the property was in Sam H. Adams prior to 1942, but the parcels were separate; title to the separate lots vested in Adams at separate times and as far back as 1906 W. J. Smith had conveyed appellee's lot describing it as follows: "One town lot in Dothan Alabama commencing at the crossing of Foster and South St., and running west half to Oates St., thence North 70 yards to McEachern lot. Thence east to Foster St., thence South back to starting point." This deed and subsequent deeds were recorded.

Appellee's answer also carried exhibits of recorded deeds in appellants' chain of title from 1905 to the present. Two deeds dated 1905 and 1908 described the west boundary as "thence North along W. J. Smith's lot 70 feet"; the next one dated 1918 said, "thence North along the West boundary of lot formerly owned by W. J. Smith, but now the property of C. S. Roby 70 feet" and all the other deeds described it as appears in appellants' deed.

The issue is one of fact and the court made the following finding of fact:

"It is clear and evident from the deed of Sam H. Adams to James C. Taylor,—that he, Sam H. Adams, did not intend to convey, and did not convey to James C. Taylor, any part or portion of the 'Ludlum Lot' which he owned, for his deed to James C. Taylor, in the description of the property conveyed therein, contains the following:

" 'Beginning at the southwest corner of lot formerly owned by C. E. Harmon, now the property of J. W. Gilbert, and running along the East side of South Oates Street seventy (70) feet to South Street; Thence East along the North Side of South Street two hundred and ten (210) feet; thence North along the West Boundary of lot formerly owned by W. J. Smith, now the property of Sam H. Adams, seventy (70) feet.'

"This same description is contained in the deed from James C. Taylor to Reba Taylor and Reba Taylor to Plaintiffs."

 While the deeds furnished the means of locating the boundaries, their actual locations was an independent inquiry. Middlebrooks v. Sanders, 180 Ala. 407, 61 So. 898.

 The court having heard the witnesses ore tenus, every presumption will be indulged in favor of the trial court, and its finding and decree will not be disturbed unless palpably wrong. There is ample evidence to support the decree rendered. Fuller v. Blackwell, 246 Ala. 476, 21 So.2d 617; Swanson v. Bergeron, 230 Ala. 373, 161 So. 246.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.