# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 15-427 consolidated with 15-428

**MARLON LITTLETON, ET AL.**

**VERSUS**

**SALINE LAKESHORE, LLC**

**consolidated with**

**ERIC MORACE, ET AL.**

**VERSUS**

**SALINE LAKESHORE, LLC**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2013-9302 C/W 2013-9303
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**JOHN D. SAUNDERS**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and David Kent Savoie, Judges.

**AFFIRMED.**

**Charles A. Riddle, III**
**P.O. Box 608, 208 E. Mark St.**
**Marksville, LA 71351-0608**
**(318) 240-7217**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
    **Marlon Littleton**
    **Buddy Cannon**
    **Eric Morace**
    **Frank Morace**

**Rodney Marchive Rabalais**
**Attorney at Law**
**P. O. Box 447**
**Marksville, LA 71351**
**(318) 253-4622**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Saline Lakeshore, LLC**

**SAUNDERS, Judge.**

This is a summary judgment case involving four Plaintiffs' possessory actions against an LLC. The LLC sent letters to Plaintiffs after purchasing land that Plaintiffs allegedly possessed requesting that they remove themselves and any movable property from the land. After Plaintiffs' cases were consolidated, the trial court granted their motion for summary judgment finding that they were in possession of the disputed land.

The LLC appealed. After de novo review, we affirm the trial court's summary judgment declaring Plaintiffs to be in possession of the disputed land.

## FACTS AND PROCEDURAL HISTORY:

Saline Lakeshore, LLC (Saline) is an LLC owned by William Joseph McPherson and his wife. Saline purchased land in Avoyelles Parish that included the entirety of an island near Saline Lake and Saline Bayou known as Horse Island.

Marlon Littleton, Buddy Cannon, Frank Morace, and Eric Morace (collectively Plaintiffs) owned what they referred to as "camps" that they or their ancestors floated to Horse Island. These camps were housing structures whose bottoms were outfitted with materials that would cause the camps to float. These structures were floated to Horse Island and apparently floated above a flooded Horse Island in times of high water. Then, the camps were attached to trees or sunken pipes with ropes. As such, when the water receded to its typical level, the camps were on the dry ground of Horse Island. Thereafter, the owners of these camps cleared, maintained, and possessed a camp yard located where the camps sat on dry ground. Further, the owners of the camps constructed various structures such as docks, sheds, pavilions, roast pig cookers, fish skinning racks, and water wells on their camp yards.

After purchasing Horse Island, in April of 2013, Saline sent letters to individuals who had camps and camp yards on Horse Island letters requesting that they remove themselves and their movable property from Horse Island. On May 15, 2013, Plaintiffs, Marlon Littleton and Buddy Cannon, and Plaintiffs, Frank Morace and Eric Morace, filed two separate petitions for possessory action against Saline requesting that they be placed back in peaceable possession of their camp yards. The matters were consolidated.

Plaintiffs contended that Saline disturbed their possession of their camp yards when it sent the April 2013. After conducting discovery, on October 24, 2014, Plaintiffs filed a motion for summary judgment declaring that they were entitled to be restored to the peaceable possession of their property on Horse Island.

On December 19, 2014, the trial court, after reading the evidence filed in the matter, granted Plaintiffs' motion. Saline appealed, alleging one assignment of error.

**DISCUSSION OF THE MERITS:**

Saline's sole assignment of error is that the trial court erred when it granted summary judgment for each Plaintiff. We find no merit to this assignment of error.

> The ruling of the trial court on a motion for summary judgment is reviewed de novo. *Covington v. McNeese State Univ.*, 08-505 (La.App. 3 Cir. 11/5/08), 996 So.2d 667, *writ denied*, []09-69 (La. 3/6/09), 3 So.3d 491. The appellate court applies "the same criteria that govern a trial court's determination of a motion for summary judgment." *Breaux v. Cozy Cottages, LLC*, 14-486, p. 4 (La.App. 3 Cir. 11/12/14), 151 So.3d 183, 187. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). A motion for summary judgment:

2

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for the purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(B)(2).

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art 966(C)(2).

*Hebert v. Richard*, 15-8, pp.4-5 (La.App. 3 Cir. 6/17/15), 166 So.3d 1265, 1270-71.

Here, Plaintiffs are the movants on the issue of whether each is entitled to be placed back in peaceable possession of the areas of land in dispute. Each Plaintiff would bear the burden of proof on this matter at trial. Thus, each must show that there exists "no genuine issue as to material fact," and that each "is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B)(2).

The possessory action is "one brought by the possessor of immovable property or of a real right therein to be maintained in his possession of the property or enjoyment of the right when he has been disturbed, or to be restored to the possession or enjoyment thereof when he has been evicted." La.Code Civ.P. art. 3655.

3

To maintain the possessory action the possessor must allege and prove that:

(1) He had possession of the immovable property or real right therein at the time the disturbance occurred;

(2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance, unless evicted by force or fraud;

(3) The disturbance was one in fact or in law, as defined in Article 3659; and

(4) The possessory action was instituted within a year of the disturbance.

La.Code Civ.P.art. 3658.

"To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing." La.Civ.Code art. 3424. "Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing." La.Civ.Code art. 3425. "One is presumed to intend to possess as owner unless he began to possess in the name of and for another." La.Civ.Code art. 3427. "In the absence of title, one has possession only of the area he actually possesses." La.Civ.Code art. 3426.

What constitutes possession depends primarily on the nature of the property. "The quality of possession required in a particular case depends not only on its classification as good or bad faith possession, but also on the type of land in dispute." *Liner v. Louisiana Land & Exploration Co.,* [319 So.2d 766] at 772 [La.1975]. The acts of possession required in the case of farm land must be of a greater quality than in the case of woodland; and, a greater quality of possession is required in the case of woodland than in the case of swamp or marsh land. *Liner, supra* at 772. Further, where an individual claims by corporeal possession alone and without title, he must show an adverse possession within enclosures. *Norton v. Addie,* [337 So.2d 432] at 436 [La.1976]. "'Enclosed' does not necessarily mean 'fenced in.'" *City of New Orleans v. New Orleans Canal, Inc.,* 412 So.2d 975, 981 (La.1982).

"What the court means by 'enclosures', as that term is used in the numerous cases found in the

> jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof. . . ." *Hill v. Richey*, 221 La. 402, 59 So.2d 434, 440 (La.1952).

*Chevron U.S.A. Inc. v. Landry*, 558 So.2d 242, 244 (La.1990).

Plaintiffs submitted nine affidavits and six depositions in order to prove their entitlement to their motion for summary judgment. Each contends that these affidavits and depositions show that there is no genuine issue of material fact that each is entitled to a judgment as a matter of law that he is legally in possession of the relevant area of land in dispute.

One of the affidavits submitted by Plaintiffs was that of Jared Couvillion, a certified land surveyor who surveyed the five areas of land involved in this case. Couvillion testified in his affidavit that he drew the lines on his survey to reflect the maintenance or use of the lands by Plaintiffs. He testified to personally observing general upkeep of the lands as enclosed by the lines drawn on his survey. Further, he testified to observing improvements of the lands by the existence of living structures that were "secured by a rope mechanism either to trees or poles buried in the ground. This method would allow the camp to float in times of high water but remain on the land upon which is sits." Further, Couvillion testified to seeing permanently attached improvements to which "[i]t was obvious that the items had been on the lots for years." Finally, Couvillion opined that "[t]here is no question that the four Plaintiffs in this suit possess, as owners, the five lots I surveyed."

5

The contents of this affidavit are corroborated by the affidavit and deposition testimony of each of Plaintiffs, the affidavit testimony of Phillip Zimmerman, John Mark Foster, Keith Harmson, and Daniel Reed, and even the deposition testimony of one of Saline's owners, Mr. McPherson, wherein the following exchange took place:

Q      Have you ever gone on Horse Island?

A      Yes.

Q      Just walked the area?

A      Right.

Q      Have you seen the camps that are referred to here?

A      Yes.

Q      Does it look like those people have been there a while?

A      Yes.

Q      Does it look like they've been there over a year?

A      Yes.

There is no evidence submitted by Saline to controvert any of the above cited evidence. Instead, Saline points to statements made by Couvillion in his deposition that it interprets as Couvillion stating that the lines of his surveys depict the area that Plaintiffs were claiming to possess as opposed to the area that Plaintiffs actually possessed. It is clear in our reading of Couvillion's deposition that the lines on his survey "depict the area that the [] individuals were basically occupying and using for camping and recreational purposes." Couvillion's statement is in line with La.Civ.Code art. 3425's definition of corporeal possession as "the exercise of physical acts of use, detention, or enjoyment over a thing." Further, Couvillion's affidavit states that the "[l]imits as to the lots were

determined to encompass any and all forms of what was being maintained by the camp areas." Thus, this court is not swayed by Saline's reliance on its interpretation of non-contextual, hand-selected statements made by Couvillion in his deposition.

Next, Saline argues that the nature of the camps prevents them for being used in determining whether Plaintiffs exercised possession of the land in dispute. Saline relies upon dictionary definitions to bolster its position that the main structures on each camp yard were more closely akin to the definition of a houseboat than a camp. Regardless of whether this is true, the use of the structure on the land and the use of the land, itself, are relevant to the issue before us, not the nomenclature of the living structures. As such, the record is filled with evidence that the structures were used as camps for the last year and is completely devoid of evidence that they were used as houseboats in that timeframe. Even if the structures might have once been a houseboat or are closer to a dictionary definition of a houseboat, this does not change the fact that these structures were used as camps on areas of land cleared and maintained by Plaintiffs for the last year. Accordingly, we find no merit to this argument raised by Saline.

Finally, Saline cites the supreme court case of *Martel v. Hunt*, 197 So. 402 (La.1940) for the proposition that Plaintiffs did not prove possession of the areas of land in dispute. We find *Martel* to be of little application to the case before us.

In *Martel*, the only external signs of possession were the occasional cutting of trees for lumber. There were no structures of any kind built other than a "small squatter's shack" whose owner was found to have an indifferent attitude toward the land in question. Here, we have uncontroverted testimony of the existence of docks, sheds, pavilions, roast pig cookers, fish skinning racks, and water wells in

addition to the camps. We have uncontroverted testimony that Plaintiffs maintained the areas depicted via grass and weed removal. We have uncontroverted testimony of extensive use of the cleared lands by Plaintiffs.

Further, the land in question in *Martel* was not susceptible of cultivation. Here, there is evidence in the record that at least one of the camp yards had a vegetable garden and that each area of land was maintained by removal of vegetation.

Finally, the supreme court found that the testimony in *Martel* was vague and indefinite as to the limits where the land was physically used and that there was no survey ever conducted. Here, we have uncontroverted testimony from multiple sources, including a registered land surveyor, as to the limits where the land was physically used, and we have an actual survey conducted wherein lines were drawn depicting the limits of that use.

Accordingly, we find no error by the trial court in granting Plaintiffs' motion for summary judgment. It is clear from the evidence in the record that there is no genuine issue of material fact and that Plaintiffs are entitled to a judgment as a matter of law.

Moreover, we note that La.Code Civ.P art. 3657, in pertinent part, states, "[w]hen, except as provided in Article 3661(1)-(3), the defendant in a possessory action asserts title in himself, in the alternative or otherwise, he thereby converts the suit into a petitory action, and judicially confesses the possession of the plaintiff in the possessory action."

While Saline did not assert title as owner in its reconventional demand, the following exchange took place during the deposition of Saline's owner, Mr. McPherson:

Q       Now, you have a reconventional demand . . . stating that if the petitioners are in possession of the three tracts, that Saline makes them defendants as trespassers of Saline's possessory rights.  My question to you is what are Saline's possessory rights?  What acts of possession exist at all that you have possession of Horse Island?

A       My deed.

Q       So that is it, the deed?  Not any use of it?

A       Do what now?

Q       You don't have any facts of use of Horse Island whether by you or by . . .

A       The same that I have of all the rest of my property.

Q       Which is what?

A       That I have an ownership of it?

Q       So, you are claiming ownership of it?

A       Yes.

Q       And you are claiming ownership of Horse Island?

A       Correct.  That shocks you?  Why are we here?

This exchange in Mr. McPherson's deposition arguably could be deemed a judicial confession that Plaintiffs were in possession of the areas of land in dispute. However, this issue was not raised or briefed by any party.  Therefore, despite the fact the applicable standard of review and La.Code Civ.P.art. 2164 would allow this court to consider the merits of this issue under La.Code Civ.P art. 3657, we choose to adjudicate as we did above.

**CONCLUSION:**

Saline Lakeshore, LLC raises a single assignment of error.  After de novo review, we agree with the trial court that Marlon Littleton, Buddy Cannon, Frank Morace, and Eric Morace were each entitled to summary judgment declaring them

in possession of the subject property.  Costs of these proceedings are assessed to Saline Lakeshore, LLC.

**AFFIRMED.**