STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

20-14 C/W
20-15, 20-16, 20-17

SALINE LAKESHORE, L.L.C.

VERSUS

MARLON LITTLETON & BENITA LITTLETON

************

APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, DOCKET NO. 2016-2550
HONORABLE KERRY SPRUILL, DISTRICT JUDGE

************

SYLVIA R. COOKS
JUDGE
************

Court composed of Sylvia R. Cooks, D. Kent Savoie and Candyce G. Perret, Judges.

**AFFIRMED.**

**Randall L. Wilmore**
**Edward E. Rundell**
**Gold, Weems, Bruser, Sues & Rundell**
**P.O. Box 6118**
**Alexandria, LA 71351**
**(318) 445-6471**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
       **Saline Lakeshore, L.L.C.**

**Ricky L. Sooter**
**4615 Parliament Drive, Suite 202**
**Alexandria, LA 71303**
**(318) 767-2226**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
       **Saline Lakeshore, L.L.C.**

**Charles A. Riddle**
**Riddle & Donaghey, LLC**
**P.O. Box 608**
**Marksville, LA 71351**
**(318) 240-7217**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Marlon Littleton and Benita Littleton**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

In 2011, Saline Lakeshore, L.L.C. (hereafter Saline), a corporation owned by William Joseph McPherson and his wife, purchased approximately 1800 acres of land in Avoyelles Parish from Delta assets of North Carolina. Included in that area was the entirety of an island near Saline Lake and Saline Bayou known as Horse Island.

Shortly after the purchase, it was discovered that several people on Horse Island had house boats on the island. These people owned what they referred to as "camps" that they or their ancestors floated to Horse Island. These camps were housing structures whose bottoms were outfitted with materials that would cause the camps to float. These structures were floated to Horse Island and were able to float above Horse Island in times of high water, while attached to trees or sunken pipes with ropes. When the water receded to its typical level, the camps were on the dry ground of Horse Island. Thereafter, the owners of these camps cleared, maintained, and possessed a camp yard located where the camps sat on dry ground. The owners of the camps also constructed various structures such as docks, sheds, pavilions, roast pig cookers, fish skinning racks, and water wells on their camp yards.

In April of 2013, Saline sent letters to individuals who had camps and camp yards on Horse Island requesting that they remove themselves and their movable property from Horse Island. On May 15, 2013, Marlon Littleton and Buddy Cannon, and Frank Morace and Eric Morace (the camp owners), filed two separate petitions for possessory action against Saline requesting that they be placed back in peaceable possession of their camp yards. The matters were consolidated.

The camp owners contended that Saline disturbed their possession of their camp yards when it sent the April 2013 letters. After conducting discovery, on October 24, 2014, the camp owners filed a motion for summary judgment declaring

that they were entitled to be restored to the peaceable possession of their property on Horse Island. The district court granted the camp owners' motion. This court on appeal found no error by the district court in granting Plaintiffs' motion for summary judgment, determining the evidence in the record established the camp owners were entitled to the peaceable possession of the property on Horse Island. *Littleton v. Saline Lakeshore, LLC*, 15-427 (La.App. 3 Cir. 11/4/15), 178 So.3d 274.

Following this court's ruling in *Littleton*, Saline filed the present petitory actions against the respective camp owners. The actions were consolidated for trial. Saline maintained it possessed ownership of Horse Island through its land purchase from Delta Assets. Saline filed a partial motion for summary judgment contending an unbroken chain of valid title to Horse Island. The district court noted the property description in the original patent stated "All of Section 13 lying South of Saline Lake and Saline Bayou in Section 13, T4N, R4E, Avoyelles Parish – 606 acres." The district court noted a literal reading of that description purports to describe lands that are located south of the waters of both Saline Lake and Saline Bayou. Further, the district court found there was no express mention made of an island in either the original transfer from patent or through each of the deeds of transfer prior to the acquisition by Saline. Finding material issues of fact exist as to whether Horse Island was included in the property described and transferred by the various deeds, the district court denied the motion for partial summary judgment.

The consolidated petitory actions proceeded to trial, after which the district court rendered judgment dismissing Saline's petitory actions. In its extensive written reasons for judgment, the district court found there were substantial defects in the chain of title such that Saline could not prove "title good against the world" as required by law. First, the district court held "the facts of this case support a finding that the land of Horse Island is separated from the balance of properties in Section 13 by the navigable waters of Saline Lake and Saline Bayou, the bottoms of

4

which are state-claimed and not subject to private ownership." Second, the district court found substantive title defects in the 1997 transfer of the property from Morrison Enterprises to Morrison Ventures, as six of the nine partners did not sign as vendors in the sale of the property.

This appeal followed wherein Saline asserts the district court made "multiple factual and legal errors warranting reversal" of its finding that Saline did not prove "title good against the world." They appeal both the district court's finding that Horse Island was not part of the property purchased by Saline and its finding that there was a title defect in the 1997 transfer from Morrison Enterprises to Morrison Ventures.

## ANALYSIS

To properly adjudicate Saline's petitory actions, we must determine the appropriate burden of proof. The burden of proof in a petitory action is dependent upon whether the camp owners were in possession of the property. Here, this court in *Littleton*, 178 So.3d 274, found the district court did not err in finding the camp owners were in possession of the camp sites in question on Horse Island. In *Pure Oil Co. v. Skinner*, 294 So.2d 797, 799 (La.1974), our supreme court held that a plaintiff not in possession versus a defendant who is in possession is required "to show good title against the world without regard to the title of the party in possession." Title "good against the world" is proven by showing an unbroken chain of valid titles from the sovereign. *Whitley v. Texaco, Inc.*, 434 So.2d 96, 102 (La.App. 5 Cir. 1982), *writ denied*, 435 So.2d 445 (La.1983).

It is not disputed that the property description contained in the original patent is "all of Section 13 lying south of Saline Lake and Saline Bayou in Section 13, T4N, R4R, Avoyelles Parish – 606 acres." The district court noted there is no express mention of any island either in the original transfer from patent or through each of

5

the successive deeds of transfer prior to Saline's acquisition. There also was no mention of Horse Island on the General Land Office (GLO) map.

The district court found the defect in the chain of title pertinent to these proceedings commences with the deed to the Red River Atchafalaya Levee Board. That description describes the properties as "all South of Saline Lake and Saline Bayou in Section 13, T4N, R4R, North of Red River District – 606.64 acres." Again, the description makes no mention of any island and clearly describes land situated all south of Saline Lake and Saline Bayou.

Initially, Saline contends the district court erred in not giving appropriate effect to the GLO map produced at trial. Specifically, Saline asserts an A-B meander line drawn on the map was sufficient to constitute a boundary, which would indicate Horse Island should have been included in the sale to Saline. The district court discussed the GLO map in its written reasons for judgment and determined the natural boundaries of Saline Lake and Saline Bayou control rather than a meander line drawn on the map. In its reasons, the district court found probative the testimony of Cheston Hill, a Section Manager at the State Land Office, who discussed the A-B meander line on the GLO map, and explained the significance as follows:

Q. Are you aware that the only points that they have actually surveyed on the GLO map were along the eastern boundary of section 13 and the northern boundary when it comes to the water?

A. That's right. They only traversed – I mean they did not traverse the waterbody inside of Section 13.

Q. And when you say "traverse," you're stating that they did not survey it; they did not put calls as to –

A, That's right.

Q. – degree, minutes and all the good stuff?

A. Right, distances and bearings.

Q. It's basically hand-drawn lines from set points?

6

A. Correct.

Q. So I'm going to mark this point. A (indicating), okay. And I'm going to mark this point B (indicating). I will mark this point C (indicating) and this point D (indicating). Do you see where point A is?

A. Uh-huh.

Q. So its your understanding that, from point A to point B, there is not a survey line?

A. Correct.

Q. From point B to point C is a survey line?

A. Correct.

Q. And from C to D is basically a hand-drawn, not a surveyed line.

A. Correct.

Q. But from D to A is surveyed?

A. Correct. The distance is measured.

[Saline] argues that the un-surveyed line from A to B supports its case that Horse Island is included in the deeds of transfer in the chain of title. As explained by Cheston Hill, the hand-drawn line or sketch line from A to B is at best an estimate of the existing treeline along the waterbody. This hand-drawn line cannot support the legal argument that the land comprising Horse Island was included in any deed of transfer in the chain of title concerned.

. . . .

The words "inundated lands within Section 13 south of Saline Lake and Saline Bayou" [as referenced in Saline's deed of acquisition] cannot describe and do not describe Horse Island which is clearly surrounded by the navigable state-owned water bottoms of Saline Lake and Saline Bayou. The legal description for the property of Horse Island, again, does not and cannot include land described as located "all South of Saline Lake and Saline Bayou."

We find no error in the district court's finding the actual boundaries of Saline Lake and Saline Bayou and not the non-surveyed meander lines were the appropriate boundaries of Saline's acquisition. The camp owners point out that Frank Willis, a registered land surveyor, who testified on behalf of Saline, previously noted in

7

*Rapides Parish Police Jury v. Grant Parish Police Jury*, 05-268, p. 30 (La.App. 3 Cir. 2/22/06), 924 So.2d 357, 377, *writ denied*, 06-1151 (La. 9/15/06), 936 So.2d 1269, that "the courts have repeatedly ruled that lakes themselves are natural monuments and are the boundary, not the GLO meander lines." This court has consistently held a district court's determination of the location of a boundary is factual and should not be reversed in the absence of manifest error. *Lamson Petroleum Co. v. Hallwood Petroleum, Inc.*, 99-1444 (La.App. 3 Cir. 5/24/00), 770 So.2d 786, *writ denied*, 00-2568 (La.11/27/00), 775 So.2d 448; *Barker v. Quality Builders, Inc.*, 503 So.2d 1170 (La.App. 3 Cir.1987); *Broussard v. Coleman*, 479 So.2d 1016 (La.App. 3 Cir.1985), *writ denied*, 481 So.2d 1354 (La.1986).

We also find without merit Saline's argument that the disregarding of the A-B meander line would alter the parish line between Avoyelles and LaSalle Parish. This assertion is based on the testimony of Saline's expert, Frank Willis. However, Mr. Willis acknowledged in his testimony that the surveyor "didn't survey it precisely, [and] he might be off a little bit where the water is." Moreover, there was testimony that use of the A-B meander line would actually take property from LaSalle Parish. After a review of the record, we find nothing to indicate the parish line would be altered by disregarding the non-surveyed A-B meander line.

Saline further argues the district court erred in finding Horse Island was separated from the balance of the properties in Section 13 by the navigable waters of Saline Lake and Saline Bayou, the bottoms of which are state claimed and not subject to private ownership. Specifically, Saline argues navigability of those waters was never proven. We disagree.

In Louisiana, waterways are navigable in law when they are used or susceptible of being used in their natural and ordinary condition as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on the water. *Ramsey River Road Property Owners*

8

*Association, Inc. v. Reeves*, 396 So.2d 873 (La.1981). A water course is navigable when by its depth, width, and location it is rendered available for commerce. *Shell Oil Company v. Pitman*, 476 So.2d 1031 (La.App. 3 Cir.1985). A lack of commercial traffic, however, does not preclude a finding of navigability. *State ex rel Guste. v. Two O'Clock Bayou Land Co., Inc.*, 365 So.2d 1174 (La.App. 3 Cir.1978), *writ denied*, 367 So.2d 387 (La.1979). The district court's findings of fact on the question of navigability are reviewable by appellate courts under the manifest error standard of review. *Johnson v. State Farm Fire and Casualty Co.*, 303 So.2d 779 (La.App. 3 Cir.1974); *Kieff v. Louisiana Land and Exploration Co.*, 99-2947 (La.App. 4 Cir. 1/24/01), 779 So.2d 85.

Both below and here on appeal, Saline relies on the testimony of Mr. Willis, who stated at one point in his testimony that Horse Island was "low overflow swampland." However, later in his testimony he stated Horse Island sits high above the water, as much as 15 feet, unless there was extreme flooding from the Red River or Mississippi River. Cheston Hill testified Horse Island was in the "middle of navigable waters." The district court noted that aerial photos introduced at trial "reflect large bodies of water representing both Saline Lake and Saline Bayou." The district court, in its finding that Horse Island sits in the middle of navigable waters, stated:

> Finally, the vastness of the Larto-Saline Complex is described in the Louisiana Department of Wildlife & Fisheries Waterbody Management Plan Series. The complex today includes Larto Lake, Saline Lake, Shad Lake and numerous interlocking bayous and smaller lakes. The complex receives regular backwater flooding from Red River, Black River and Little River. The lakes and connecting bayous presently cover a combined surface area of approximately 8,200 acres. Saline Lake and Saline Bayou originally connected to both Red River and Larto Lake. Today it is still inter-connected with Larto Lake. Saline Lake and Saline Bayou were historically hunting, trapping and fishing areas used by petitioners in the related possessory action and their ancestors for generations.

We find no manifest error in the district court's finding that Horse Island is "located in the middle of navigable waters the bottom of which are owned by the State."

After a thorough review of the record, we find the district court correctly found Saline failed to prove good title against the world. The description of all land "South of Saline Lake and Saline Bayou" excludes Horse Island. The facts of the case supported the district court's finding that Horse Island is separated from the balance of properties in Section 13 by the navigable waters of Saline Lake and Saline Bayou, the bottoms of which are state claimed and not subject to private ownership. As the district court noted, had the state wanted to convey Horse Island or all land in Avoyelles Parish it could have done so. However, it did not, and the words on the deed only convey "all of section 13 lying South of Saline Lake and Saline Bayou."

Saline also asserts as error the district court's finding that it also failed to prove title "good against the world" because of purported defects in the sale from Morrison Enterprises to Morrison Ventures in 1997.[1] The district court, in extensive written reasons, found the record was clear that six of the nine partners of Morrison Enterprises did not sign as vendors to the sale in question to Morrison Ventures. Saline maintained that at the time of the sale, six partners of Morrison Enterprises had surrendered their partnership interests and there were only three partners remaining. However, the district court noted no document containing any conveyance or transfer of those partnership interests was ever introduced in the record. We find no error in the district court's findings. The partnership agreement of Morrison Enterprises specifically held "None of the partners shall sell, assign, give, encumber or otherwise dispose of all or any part of its interest in the partnership, its assets or income, without the written consent of the other partners."

_____

[1] We note the district court's finding that title to Horse Island was never granted by the description all land "South of Saline Lake and Saline Bayou" is sufficient to defeat Saline's petitory actions. However, we will address Saline's assertion that the district court erred in finding it failed to prove "title good against the world" in the sale from Morrison Enterprises to Morrison Ventures.

Saline contends that La.R.S. 9:5646 is applicable, which provides, in pertinent part, as follows:

> A. (1) Any action to set aside a sale, transfer, lease, mortgage, encumbrance, or any other document by any legal entity or unincorporated association affecting any immovable property located in this state on the ground that the officer, agent, or other representative of the legal entity or unincorporated association signing the document was without authority to do so is prescribed by five years, reckoning from the day the document was recorded in the mortgage or conveyance records, or both, as applicable, of the parish in which the immovable property is located. Nothing contained in this Section shall be construed to limit or to establish a prescriptive period as to any proceeding which may arise between the legal entity or unincorporated association and the person acting in a representative position.
>
> . . . .
>
> B. As used herein, "legal entity" means and includes any corporation, partnership, limited liability company, trust, or any other legal entity, whether public or private, whether business or nonprofit, and whether domestic or foreign.
>
> . . . .
>
> E. Upon the expiration of the prescriptive period established by Paragraph A(2) of this Section and the filing of an affidavit by the then current owner of the property or as of the date of the affidavit, it shall be conclusively presumed that any sale, transfer, or other conveyance to or from the legal entity or unincorporated association shall have vested title in and to or from the legal entity or unincorporated association as of the date of recordation of the sale, transfer, or other conveyance in the office of the clerk and recorder for the parish in which the immovable property is located.

The district court found this statute inapplicable because there was no action pending before the court to set aside a sale, transfer, lease, encumbrance or any other document by any legal entity as to any immovable property located in the State. The camp owners herein are only challenging Saline's claim of title good against the world. We agree with the district court that the defects in Saline's title are substantive in nature and the provisions of La.R.S. 9:5646 do not apply to a petitory action such as this.

**DECREE**

For the foregoing reasons, the judgment of the district court dismissing Saline's petitory action against Marlon Littleton and Benita Littleton is affirmed. All costs of this appeal are assessed against appellant, Saline Lakeshore, L.L.C.

**AFFIRMED.**